UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN G. WARNER, et al.,<br><br>Defendants. | Case No. 19-cv-04628-KAW<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 13, 29 |

Plaintiff American Alternative Insurance Corporation filed the instant case against Defendants John G. Warner and Law Offices of John G. Warner, seeking to rescind a professional liability insurance policy issued to Defendants. (Compl. ¶¶ 1-2, Dkt. No. 1.) On October 7, 2019, Defendants filed the pending motion to dismiss the complaint. (Defs.' Mot. to Dismiss, Dkt. No. 13.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b), and VACATES the December 5, 2019 hearing.[1] Having reviewed the parties' filings and the relevant legal authority, the Court DENIES Defendants' motion to dismiss.

## I. BACKGROUND

Around 2002, the firm Phillips, Downs & Simontacchi, LLP ("Phillips Firm") represented Daniel H. Morgan, Mark S. Cunningham, and MCCE Development, LLC (collectively, "Morgan Clients") in several litigation matters against the City of Novato ("Novato Litigation"). (Compl. ¶ 24.) Starting in January 2004, the Phillips Firm jointly represented the Morgan Clients and George Morf in the Novato Litigation. (Compl. ¶ 24.) During this representation, the Phillips Firm did not advise the Morgan Clients or Mr. Morf that there was a conflict of interest due to the

---

[1] Accordingly, Plaintiff's request for an oral argument is DENIED. (Dkt. No. 29.)

United States District Court
Northern District of California

1  joint representation, nor did the Phillips Firm seek a waiver of the conflict of interest from either

2  client.  (Compl. ¶ 25.)

3      On August 23, 2013, Mr. Morf filed a lawsuit against the Morgan Clients and the Phillips

4  Firm ("Morf Litigation").  (Compl. ¶ 26.)  Mr. Morf asserted claims against the Phillips Firm for

5  legal malpractice and breach of fiduciary duty based on the joint representation, and against the

6  Morgan Clients for indemnification and misrepresentations related to the Novato litigation.

7  (Compl. ¶ 26.)  Defendants represented the Morgan Clients during the Morf Litigation, *i.e.*, from

8  August 22, 2013 through the appeal of the June 8, 2015 jury verdict.  (Compl. ¶ 27.)

9      On April 25, 2016, Defendants sent the Morgan Clients a letter, advising them of the

10  damages they may be able to recover from the Phillips Firm for the undisclosed conflict of

11  interest.  (Compl. ¶ 28, Exh. D at 31-32.)  Defendants also advised that the statute of limitations

12  had already expired unless a tolling exception applied.  (Compl., Exh. D at 32-33.)  Defendants

13  stated that they believed the statute of limitations would start on the date of the adverse judgment,

14  *i.e.*, June 9, 2015.  (*Id.* at 33.)

15      On June 6, 2016, Defendants, on behalf of the Morgan Clients, filed a malpractice suit

16  against the Phillips Firm ("Phillips Litigation").  (Compl. ¶ 29.)  On February 7, 2017, the Phillips

17  Litigation was dismissed on statute of limitation grounds.  (Compl. ¶ 30.)  In part, the state court

18  found that the Morgan Clients had "incurred 'actual injury' more than one year before this

19  malpractice lawsuit was filed when they were compelled to defend Morf's claim . . . an event

20  which Plaintiff attributes to defendants' negligence and breach of fiduciary duty . . . ."  (Compl.,

21  Exh. D at 29.)

22      On April 3, 2017, Defendants submitted an "Application for Lawyers Professional

23  Liability Insurance" ("Insurance Application") to renew their professional liability insurance

24  policy for the period of May 8, 2017 to May 8, 2018.  (Compl. ¶ 14.)  The Insurance Application

25  included the question:

26         8.     After inquiry, are any attorneys in your firm aware:
    . . .

27      a.  of any professional liability, claims made[, or] claims made
      against them in the past five years?

28      b.  of any legal work or incidents that might be expected to lead to a

claim or suit against them?

(Compl. ¶ 15.)  Defendants responded "No" to both.  (Compl. ¶¶ 15-16.)  The Insurance

Application also contained a "Representations Provision," in which Defendants affirmed that the

information contained in the Insurance Application was true to the best of their knowledge.

(Compl. ¶ 17.)  Additionally, on April 12, 2017, Defendants submitted a letter to Plaintiff's agent,

which stated, in part: "I am not aware of any potential claims, disciplinary matters, investigations

or circumstances that may give rise to a claim."  (Compl. ¶ 19.)

Based on Defendants' representations, Plaintiff issued Lawyers Professional Liability

Insurance" Policy No. 3LA2PL0000687-02 to Defendants, effective for the policy period May 8,

2017 to May 8, 2018 ("Policy"), with a retroactive date of May 8, 1998.  (Compl. ¶¶ 21, 38.)  The

Policy states that it does not apply to: "Any CLAIM arising out of any WRONGFUL ACT

occurring prior to the effective date of this policy if . . . the INSURED at or before the effective

date of this policy knew or could have reasonably foreseen that such WRONGFUL ACT might be

expected to be the basis of a CLAIM."  (Compl. ¶ 23.)

On January 16, 2018, the Morgan Clients wrote to Defendants regarding their malpractice

claims against Defendants for failing to timely file the Phillips Litigation.  (Compl. ¶ 31.)

Defendants tendered the January 16, 2018 letter to Plaintiff for defense and indemnity.  (Compl. ¶

32.)  On February 2, 2018, the Morgan Clients filed their complaint for legal malpractice against

Defendants ("Morgan Litigation").  (Compl. ¶ 33.)  Plaintiff continues to provide Defendants with

a defense of the Morgan Litigation.  (Compl. ¶ 34.)

On August 9, 2019, Plaintiff filed the instant case against Defendants, seeking to rescind

the Policy on the grounds that Defendants "induced [Plaintiff] to issue the Policy by submitting an

insurance application that failed to disclose information material to the insurance risk for which

[Defendants] had applied," specifically that Defendants "knew of circumstances that might give

rise to a malpractice claim against [Defendants.]"  (Compl. ¶ 5.)  Plaintiff asserts that if it had

known of the circumstances giving rise to the dismissal of the Phillips Litigation, it would have

either not issued the Policy or used different terms or premium for the Policy.  (Compl. ¶ 38.)

Plaintiff thus brings claims for: (1) rescission based on misrepresentation, (2) rescission based on a

3

1    breach of warranty, (3) declaratory relief that it has no duty to defend, and (4) declaratory relief

2    that it has no duty to indemnify.  (Compl at 9-13.)

3          On October 7, 2019, Defendants filed the instant motion to dismiss.  On October 21, 2019,

4    Plaintiff filed its opposition.  (Pl.'s Opp'n Dkt. No. 23.)  On November 4, 2019, Defendants filed

5    their reply.  (Defs.' Reply, Dkt. No. 27.)

6                                **II.    LEGAL STANDARD**

7          Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based

8    on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule

9    12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250

10   F.3d 729, 732 (9th Cir. 2001).

11         In considering such a motion, a court must "accept as true all of the factual allegations

12   contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

13   omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

14   there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

15   *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation

17   marks omitted).

18         A claim is plausible on its face when a plaintiff "pleads factual content that allows the

19   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

20   *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate

21   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

22   will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

23         "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are

24   inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th

25   Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

26   a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a

27   probability requirement, but it asks for more than a sheer possibility that a defendant has acted

28   unlawfully . . . .  When a complaint pleads facts that are merely consistent with a defendant's

4

1  liability, it stops short of the line between possibility and plausibility of entitlement to relief."

2  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

3        If the court grants a motion to dismiss, it should grant leave to amend even if no request to

4  amend is made "unless it determines that the pleading could not possibly be cured by the

5  allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

6                                     **III.     DISCUSSION**

7        Again, Plaintiff seeks rescission of the Policy based on Defendants failing to disclose

8  material information, namely that Defendants knew of circumstances that might give rise to a

9  malpractice claim when they submitted the Insurance Application.  (Compl. ¶¶ 5, 35.)  Defendants

10  make three arguments for why dismissal of the complaint with prejudice is warranted; each of

11  these arguments fail.

12        **A.     No "Claim" Made**

13        First, Defendants contend there is no evidence that the Morgan Clients made a "claim"

14  prior to filing the Morgan Litigation in February 2018.  (Defs.' Mot. to Dismiss. at 7.)  Whether

15  the Morgan Clients made a claim, however, is not relevant to Plaintiff's rescission claim.  Indeed,

16  Plaintiff agrees that it is not arguing that Defendants "knew 'claims have been made' prior to

17  [them] filling out the Insurance Application."  (Pl.'s Opp'n at 6.)  Rather, Plaintiff argues that

18  Defendants knew of "legal work or incidents that *might be expected to lead* to a claim or suit."

19  (*Id.* (emphasis added).)  Thus, Plaintiff does not seek rescission based on claims made.

20        **B.     No "Potential" Claim**

21        Second, Defendants argue that to the extent Plaintiff relies on Defendants' knowledge of

22  "potential" claims, such terms are unenforceable as ambiguous.  (Defs.' Mot. to Dismiss at 9.)

23  Specifically, Defendants suggest that the terms "may" and "might" are ambiguous and

24  unenforceable, relying on *Gyler v. Mission Insurance Co.*, 10 Cal. 3d 216 (1973).[2]  *Gyler*,

25

26  ────────────────

27  [2] Defendants appear to rely on *Safeco Surplus Lines Co. v. Employer's Reinsurance Corp.* to argue that a potential claim only exists when the party subject to the potential claim learns of it.  (Defs.' Mot. to Dismiss at 9-10).  *Safeco*, however, only stands for the proposition that a claim is not made until "the party claimed against learns of the claim."  11 Cal. App. 4th 1403, 1408 (1992).  It does not address *potential* claims.

28

5

United States District Court
Northern District of California

1  however, does not stand for the proposition that every use of "may" and "might" is automatically

2  ambiguous and therefore unenforceable. There, the malpractice insurance policy included the

3  term: "This insurance is to indemnify against any claim or claims for breach of professional duty

4  as Lawyers which may be made against them during the period set forth . . . ." 10 Cal. 3d 216,

5  218 (1973). The term "may" created an ambiguity as to whether coverage was limited to claims

6  asserted during the policy period or if it included claims that matured during the policy period but

7  were not asserted until after. *Id.* at 218-19. The California Supreme Court found that because

8  there was an ambiguity, "[a]ny uncertainty or ambiguity . . . will be resolved in favor of imposing

9  liability." *Id.* at 219. Thus, the California Supreme Court gave the insurance policy the broader

10  interpretation, *i.e.*, that it covered claims which matured during the policy period even if the claim

11  was not actually asserted then. *Id.* In short, the use of "may" in *Gyler* rendered the insurance

12  policy at issue ambiguous, such that the ambiguity had to be interpreted in favor of coverage.

13       Here, the Insurance Application required Defendants to disclose whether they were aware

14  of "any legal work or incidents that might be expected to lead to a claim or suit against them."

15  (Compl. ¶ 15.) Defendants do not explain how the use of "might" creates an ambiguity, such that

16  the phrase is amenable to multiple interpretations. In fact, several California courts have found

17  language similar to the Insurance Application to be "perfectly clear." For example, in *Phoenix*

18  *Insurance Co. v. Sukut Construction Co.*, the insurer sought a declaration that it had no duty to

19  defend or indemnify the defendant in the legal malpractice case on the ground that the defendant

20  "knew or reasonably could have foreseen the Sukut action." 136 Cal. App. 3d 673, 676 (1982). In

21  finding that the insurer was entitled to deny coverage, the California Court of Appeal found the

22  phrase "might be expected to be the basis of a claim or suit" to be "perfectly clear," such that no

23  question of law existed. *Id.* at 677.[3]

24       Likewise, in *Admiral Insurance Co. v. Superior Court*, the California Court of Appeal

25  considered an insurance policy which would not cover "a claim arising from a 'professional

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [3] In the reply, Defendants argue that "reasonably" must be included to apply an objective standard. (Defs.' Reply at 9.) The insurance language in *Phoenix* did **not** include "reasonably," yet the Court still effectively applied an objective standard.

1  incident if, prior to the inception of the policy, the insured 'knew' or 'could have reasonably

2  foreseen, that the professional conduct may result in a claim.'" 18 Cal. App. 5th 383, 387 (2017).

3  The California Court of Appeal found that the language clearly provided "no coverage if the

4  insured knew or reasonably could have foreseen that the professional incident might result in a

5  claim." *Id.* at 388. "Accordingly, by the clear terms of the policy, there was no coverage." *Id.* at

6  389; *see also Low v. Golden Eagle Ins. Co.*, Case A094961, 2002 Cal. App. Unpub. LEXIS 4549,

7  at *6-7 (Cal. Ct. App. Jan. 25, 2002) (finding the term "the Insured had no basis to believe that

8  any such act[,] omission or Personal Injury might reasonably be expected to give rise to a Claim"

9  to be unambiguous and enforceable").

10  Therefore, the Court finds that the use of "might" in the Insurance Application and Policy

11  is not ambiguous or unenforceable.

12  **C.  Defending the Entire Claim**

13  Finally, Defendants argue that the Morgan Clients make four claims against him, but that

14  only one claim is related to the untimely Phillips Litigation. (Defs.' Mot. to Dismiss at 10.) Thus,

15  Defendants contend that because Plaintiff would have to defend three of the claims, it would have

16  to defend the entire action. (*Id.* at 11 (citing *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553, 563-

17  64 (1970).)

18  Here, however, Plaintiff does not seek to not have to defend the one claim; rather, Plaintiff

19  seeks to *rescind* the entire Policy. (*See* Compl. ¶¶ 47, 56, 59, 63; Pl.'s Opp'n at 10.) A contract

20  rescission is retroactive, such that it "effectively renders the policy totally unenforceable from the

21  outset so that there was never any coverage and no benefits are payable." *Imperial Cas. & Indem.*

22  *Co. v. Sogomonian*, 198 Cal. App. 3d 169, 182 (1988). Thus, once the Policy is rescinded,

23  Plaintiff would have no duty to defend *any* claim, regardless of whether it might have been

24  covered under the Policy. Thus, this argument is not a basis for dismissal.

25  ///

26  ///

27  ///

28  ///

7

# IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendants' motion to dismiss.

IT IS SO ORDERED.

Dated: December 3, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge