JOHN G. WARNER, SBN 046123
LAW OFFICES OF JOHN G. WARNER
21 Tamal Vista Blvd., Suite 196
Corte Madera, CA 94925
Telephone: (415) 924-2640
Email: warnerwest@aol.com

Attorney for Defendants
JOHN G. WARNER, in Pro Per

HANSON BRIDGETT LLP
ALEXANDER J. BERLINE, SBN 158098
aberline@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

Attorneys for Defendants
JOHN G. WARNER and LAW OFFICES OF
JOHN G. WARNER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, a Delaware Corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JOHN G. WARNER, an individual; and LAW OFFICES OF JOHN G. WARNER, a business entity of unknown form;<br><br>　　　　Defendants. | CASE NO. 4:19-cv-04628- KAW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Kandis A. Westmore<br>Date: October 1, 2019<br>Time: 1:30 p.m. |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................4

I.    STATEMENT OF FACTS AND PROCEDURE ............................................................4

II.   CALIFORNIA RESCISSION LAW ................................................................................8

III.  CALIFORNIA CASE LAW ...........................................................................................10

IV.   NO MATERIAL MISREPRESENTATIONS ...............................................................14

V.    INCREASE IN PREMIUM ............................................................................................14

VI.   IRRELEVANT ISSUES .................................................................................................15

VII.  ATTORNEY FEES ........................................................................................................17

VIII. CONCLUSION ..............................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Admiral Ins. Co. vs. Superior Court (A Perfect Match)*,
    18 Cal.App.5th 383 (2017) .................................................................................................. 13

*Aetna Casualty and Surety Company*,
    489 S.W. 2d 171 (Tex. Ct. App. 1972) ................................................................................ 15

*Carolina Cas. Ins. Co. vs. RDD, Inc.*,
    685 F. Supp. 2d 1052 (2010) ............................................................................................... 12

*Duarte vs. Pacific Specialty Ins. Co.*,
    13 Cal.App.5th 45, 60-61 (2017) ......................................................................................... 14

*Evanston Ins. Co. v. Mellors*,
    141 F. Supp. 3d 1367 (S.D. Ga. 2015) ................................................................................ 15

*Imperial Casualty & Indem. Co. vs. Sogomonian*,
    198 Cal.App.3d 169 (1988) ................................................................................................. 12

*Low v. Golden Eagle Ins. Co.*,
    No. A094961, 2002 WL 99556, 2002 Cal.App. Unpub. LEXIS 4549 (Cal. Ct.
    App. Jan. 25, 2002) ............................................................................................................. 12

*Massachusetts Mut. vs. Manzo*,
    234 N.J. Super., 266 (1989) ................................................................................................ 15

*O'Riordan vs. Federal Kemper Life Assur.*,
    36 Cal. 4th, 281 ................................................................................................................... 14

*Old Line Life Ins. Co. vs. Superior Court*,
    229 Cal.App.3d 1600, 1604 (1991) ..................................................................................... 15

*Phoenix Ins. Co. vs. Sukut Construction Co.*,
    136 Cal.App.3d 673 (1982) ................................................................................................. 11

*Thompson vs. Occidental Life Ins. Co.*,
    9 Cal.3d 904, 915-917 (1973) ........................................................................................ 9, 14

*Williamson & Vollmer Engineering, Inc. vs. Sequoia Ins. Co.*,
    64 Cal.App.3d 261 .............................................................................................................. 11

16819697.1

-2-    4:19-CV-04628-KSW
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Statutes**

Insurance Code,

§331 ............................................................................................................................... 14

§359 ............................................................................................................................... 14

# INTRODUCTION

Based upon well-settled California insurance coverage law, and also based upon disputed facts, this Motion for Summary Judgment should be denied.

## I. STATEMENT OF FACTS AND PROCEDURE

On August 22, 2013, an individual named George Morf sued in the Marin Superior Court his former attorneys, Phillips, Downs & Simontacchi, LLP ("Phillips firm"), and two of the partners in that law firm, and he also sued in the same case Daniel H. Morgan ("Morgan") and Mark S. Cunningham ("Cunningham") and their development entity called MCCE.  In that lawsuit, Morf alleged claims of negligence, breach of fiduciary duty, breach of contract and related causes of action, all arising out of prior litigation involving the City of Novato that was trying to stop Morgan and Cunningham from developing 35 acres of single family homes near what is called the Marin Country Club.

Morgan and Cunningham and MCCE retained defendant John G. Warner ("Warner") to defend them in that George Morf lawsuit.

In April 2015, some 18 months later, Morf dismissed Cunningham, but he continued his case against Morgan and MCCE and the Phillips law firm.

Two months later, at the conclusion of an eight-day trial, a jury rendered a verdict against the Phillips law firm for breach of fiduciary duty, and against Morgan and MCCE for breach of contract and for negligent misrepresentation.   [A copy of the jury verdict entered in the Morf case is attached as **Exhibit No. 1** in Warner's exhibits presented in opposition to this motion for summary judgment.]

Initially, Morgan considered filing an appeal of the Morf jury verdict, but upon further consideration he dismissed the appeal in January 2016, thereby ending the Morf lawsuit.   After that, Warner provided no further legal work in the Morf case.

Several months later, on March 31, 2016, Warner sent a letter to Morgan indicating that Morgan and Cunningham may have a claim against the Phillips law firm for reimbursement of attorney fees during the many years the Phillips law firm had represented them in the Morf case.

[A copy of Warner's March 31, 2016 letter to Morgan is attached as **Exhibit No. 2** in Warner's list of exhibits.]

After further discussion, Morgan and Cunningham and MCCE retained Warner to file a legal malpractice Complaint against the Philips law firm. [A copy of that Complaint is attached as **Exhibit No. 3** in Warner's list of exhibits.] The Phillips law firm demurred to that legal malpractice Complaint on the ground that the statute of limitations had begun to run while the Morf case was still pending. That demurrer was sustained in September 2016, but with leave to amend.

Thereafter, Warner, on behalf of Morgan and Cunningham and MCCE, filed a Second Amended Complaint against the Phillips law firm. [See **Exhibit No. 4**.][1]

The Phillips law firm demurred to the Second Amended Complaint, and on February 7, 2017 the Marin Superior Court sustained that demurrer without leave to amend. [See **Exhibit No. 5**.]

Three days later on February 10, 2017, Warner sent a four-page letter to his clients, Morgan and Cunningham, explaining the court's sustaining the second demurrer without leave to amend, and outlining various options for Morgan and Cunningham to consider, including the option to appeal. [That letter is attached as **Exhibit No. 6.**]

A month later, the broker for AAIC, Derek Hall, sent an email to Warner with an AAIC application attached, for the renewal of Warner's professional liability insurance for the coverage year of May 8, 2017 through May 8, 2018. (See **Exhibit No. 7**.) That insurance application was a renewal of the same insurance that AAIC had provided to Warner for the previous coverage year of May 8, 2016 through May 8, 2017.

On April 3, 2017, Warner filled out and submitted to Derek Hall the AAIC insurance application.

---

[1] Any further references to exhibits are those exhibits presented by Warner in his list of exhibits he has presented in opposition to this motion for summary judgment.

Some three weeks earlier, on March 16, 2017, Warner sent another detailed status report to Morgan and Cunningham stating that he disagreed with the demurrer ruling:

> I don't think that the damages occurred until the jury verdict was entered against Dan on George's [Morf's] misrepresentation claim.  If the jury had ruled in favor of Dan on that claim, I do not think that Dan would have any counterclaim against Scott Phillips for the attorney fees that Dan had to pay me to defend him in that George Morf lawsuit.

[A copy of that status report is attached as **Exhibit No. 8**.]

In that same status report, again Warner mentioned the possibility of appeal.

On April 12, 2017, Warner sent a letter to the AAIC insurance broker, First Indemnity Insurance Agency, and using exact language demanded by AAIC, in which Warner stated, "I am not aware of any claims, potential claims, etc. that may give rise to a claim."   [A copy of that letter is attached as **Exhibit No. 9**.]

On April 18, 2017 Warner sent another detailed status report to his clients, Morgan and Cunningham, in which Warner stated, "I believe you have a 50% chance or better of winning an Appeal."   [A copy of that letter is attached as **Exhibit No.  10**.]

Two days later, on April 20, 2017, Derek Hall, the insurance broker for AAIC, sent Warner a copy of the Certificate of Insurance and the policy itself.   [A copy of the Certificate is attached as **Exhibit No. 11**.]   Because it was a coverage renewal, the policy number was the same as the policy number for the AAIC policy that AAIC had issued to Warner for the previous coverage year of May 8, 2016 through May 8, 2017.   [This extended AAIC coverage issue becomes important later on when we talk about whether an increase in premium **standing alone** is grounds for rescission.   AAIC concedes in this motion that its out-of-pocket loss in this case is only $602 in additional premium that Warner would have paid if he had disclosed in his April 2017 AAIC insurance renewal application the February 2107 demurrer ruling.]

Three weeks later, Morgan sent an email to Warner confirming that he and Cunningham had decided not to appeal.   [See **Exhibit No. 12**.]

On May 22, 2017, Warner advised Morgan and Cunningham that they had to pay the court costs as the losing parties in the Phillips malpractice case.  Morgan replied to this concern in an

1  email dated July 26, 2017 by stating that he would "take care of this." [See **Exhibit No. 13**.] As

2  of that date, July 26, 2017, the AAIC renewal coverage had been in place for three months and as

3  of that same date neither Morgan nor Cunningham had voiced in any way any dissatisfaction of

4  Warner's work on the Phillips malpractice case, including Warner's handling of the adverse

5  demurrer ruling that had occurred in February 2017.

6  Throughout all of these proceedings, both before and after the second demurrer ruling in

7  February 2017 and Morgan's payment of the court costs in the Phillip malpractice lawsuit, Morgan

8  continued to pay Warner's attorney's fees in the Morf case. [See **Exhibit No. 14** which are

9  copies of checks Morgan's company sent to Warner for the Morf attorney's fees, including a

10 check dated October 1, 2017, **some nine months after** the February 2017 adverse demurrer ruling

11 in the Phillips malpractice case.

12 On January 16, 2018, nearly a year after the adverse demurrer ruling in February 2017, an

13 attorney in Berkeley named Garet O'Keefe sent an email to Warner indicating that he represented

14 Morgan and Cunningham and MCCE, and he enclosed a letter indicating that he intended to file a

15 Complaint for malpractice against Warner due to his handling of the Phillips malpractice action,

16 and due to Warner's handling of the underlying Morf action. [See **Exhibit No. 15**.] That

17 January 16, 2018 letter from O'Keefe was the first time that Warner had received any criticism or

18 complaint from Morgan and Cunningham, either orally or in writing, concerning Warner's

19 handling of the underlying Morf action or the underlying Phillips malpractice action.

20 Shortly thereafter, O'Keefe, on behalf of Morgan and Cunningham and MCCE, sued

21 Warner for legal malpractice. [A copy of that Complaint is attached as **Exhibit No. 16**.]

22 Warner immediately tendered the defense of that lawsuit to AAIC, and since then AAIC

23 has been defending Warner under a reservation of rights.

24 Subsequently, Morgan and Cunningham demanded $375,000 to settle their legal

25 malpractice case against Warner, and AAIC agreed to advance those funds, but only on the

26 condition that Warner reimburse AAIC dollar-for-dollar for any such settlement. Due to AAIC's

27 reimbursement demand, Warner refused to approve the $375,000 settlement with Morgan and

28 Cunningham, exercising his refusal rights under the AAIC policy.

The underlying Morgan and Cunningham malpractice lawsuit against Warner remains pending, with a trial date now set for next January, 2021.

In the meantime, AAIC has filed this coverage lawsuit, in which it seeks summary judgment. Warner opposes.

## II.     CALIFORNIA RESCISSION LAW

The California Supreme Court has adopted now well-established rules for determining whether a liability insurer such as AAIC is entitled to rescind a policy. These rules include the following:

1. In general, an insurer has a right to know all that the applicant for insurance knows regarding the insured's status, in this case the insured's **claims status**.

2. Any material misrepresentation or material concealment of such **claims status** are grounds for rescission of the policy and an actual intent to deceive need not be shown.

3. Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. The fact that the insurer has demanded **truthful** answers to **specific questions** in an application for insurance is in itself usually sufficient to establish materiality as a matter of law. [Key words here: **truthful** and **specific questions**. If the applicant gives truthful answers or if the questions submitted by the insurer are ambiguous or are subject to multiple interpretations, no rescission is allowed.]

4. If the applicant for insurance had no present knowledge of the facts sought by the insurer, or failed to appreciate the significance of the information that may be related to the applicant, the applicant's incorrect or incomplete responses would not constitute grounds for rescission.

5. An incorrect answer on an insurance application does not give rise to the defense of fraud where the true facts, if known, would not have made the contract less desirable for the insurer.

6. The trier of fact is not required to believe the "post-mortem" testimony of an insurer's agents who contend that insurance coverage would have been refused had the true facts been disclosed.

1     [See, *Thompson vs. Occidental Life Ins. Co.,* 9 Cal.3d 904, 915-917 (1973).]

While this Court has held (in the context of Warner's Motion to Dismiss) that AAIC's use of the word "might" in the Insurance Application is not ambiguous, the fact remains that, as detailed herein, there is no cited case finding against the insured absent some form of client complaint.  Litigators, by definition, litigate and ergo win and lose on daily basis.  It would be poor public policy indeed if such attorneys were required to "laundry list" every case they lost, every motion denied, or every objection overruled in their errors and omissions application—that is not the correct standard nor the call of the question.

As stated in the declaration of his expert witness, Allen Kuo, Warner was not obligated to report to AAIC any litigation events absent some kind of **client criticism or client complaint**.  Such a construction is reasonable, and thus "must be answered through the eyes of Warner," not through the eyes of AAIC.  [*St. Paul Fire & Marine Ins. Co. vs. American Dynasty Surplus Lines Ins. Co.,* 101 Cal.App.4th 1038, 1056 (2002).]

With these rules pertaining to ambiguity resolved in Warner's favor, we now turn to the specific policy provisions in dispute in this coverage lawsuit.  There are a total of three disputed policy provisions, each one inconsistent with the other.

**First,** looking at the insurance application, found in **Exhibit 7**, at the top of application page 5 (Bates Stamp page 6), there is the following question:

> "After inquiry, are any attorneys in your firm aware....
>
> 8.b. of any legal work or incidents that **might be expected** to lead to a claim or suit against them?" [Emphasis added.]  (Warner answered "no".)

There is no time limit on the reporting of such "legal work or incidence", in contrast to the previous paragraph relating to claims which has a five-year time limit.

**Second,** on the same page, there is another provision that is at issue in this coverage dispute, which is found at the bottom of the same page in a section entitled "**REPRESENTATIONS**."  In that section, in small print, AAIC asked Warner to represent that he asked all lawyers in his firm if they have knowledge of any claim, potential claim, disciplinary

matter or circumstance that may rise to a claim against that is not listed in "our response to Question 8 A & 8 B (VII)."

This provision also uses an ambiguous term, this time the term "may," but more importantly, it refers to a question that does not exist.  There is no "Question 8 A & B (VII)." Indeed, section VII of this application refers to "Additional Information" and that section is completely blank.  **This drafting mistake is totally AAIC's fault and it makes this second provision legally unenforceable as an incurable ambiguity, and this mistake probably makes the first provision cited above also unenforceable because the two provisions are intended to be linked.**

**Third,** there is a provision contained in Warner's letter dated April 12, 2017, a copy of which is found in **Exhibit No. 9**, which uses exactly the same words demanded by AAIC, wherein Warner stated "I am not aware of any claims, **potential claims**, disciplinary matters, etc. that may give rise to a claim."  [Emphasis added.]   Once again the ambiguous term "may" is used in this insuring provision.

It is also important to note that wherein the policy defines the term "claim," there is no definition of the term "'potential claims" either in the policy or in this insuring application, and the term "potential claims" is not a term of art familiar to most lawyers.

For these reasons, Warner's responses to these three application inquiries are not enforceable against him, without any resort to rescission law analysis that will be discussed below.

### III.   CALIFORNIA CASE LAW

AAIC's demand for rescission in the context of no client complaint and after the client has been informed of the income is not supported by any on point case law.

Warner contends, and his expert witness Allen Kuo concurs in his declaration in opposition to this motion, there are no reported cases, and certainly none has been cited by AAIC in this motion, which allows an insurer to rescind on the basis of material misrepresentation unless there has been a client complaint (formal or informal) or a client criticism expressed prior to the insurance application.  As Warner's expert, Allen Kuo, explains in his declaration in support of Warner's defense, "an attorney is not required to step into the shoes of the client and speculate

1  whether the attorney's representation may lead to a potential claim."   [See Kuo declaration at par.
2  7.]
3       As will be discussed below, there are no reported cases in which attorney responses to
4  insurance application provisions such as "might be expected to lead to a claim" or "may give rise
5  to a claim" or "potential claims" are treated as misrepresentations to support a demand for
6  rescission unless there was evidence that prior to coverage there was some kind of client
7  dissatisfaction with the attorney's legal work.  To force the attorney to review all of his or her
8  litigation and transaction files going back four or five years and then speculate whether a client
9  may be dissatisfied with the attorney's work is an untenable burden and contrary to malpractice
10 insurance coverage practice.
11      So let's look at the reported cases, many of which were cited by AAIC in its motion.
12      Starting with *Williamson & Vollmer Engineering, Inc. vs. Sequoia Ins. Co.*, 64 Cal.App.3d
13 261, the insured, a small engineering firm, was asked this application question:  "Is the applicant
14 aware of any circumstances which may result in any claim against him, his predecessors in
15 business, or of any present or past partners or officers?"  The answer was "no."  The court found
16 that answer to be defective because in *Williamson,* the applicant should have answered, "yes."
17 Why?  Because some three months before coverage, this engineering firm had received a letter
18 from an architect stating that there were defects in the construction drawings created by the
19 insured engineering firm, "and therefore we must hold your firm responsible for correcting the
20 condition."  That letter also stated, "We will back-charge your firm for all corrective work not
21 within the responsibility of the Contractor."  The court in *Williamson* correctly found that such
22 information was tantamount to a potential claim that the  insured engineering firm should have
23 reported its policy application.
24      In the present case, Morgan and Cunningham never told Warner they held him responsible
25 for correcting a condition nor did they attempt to "back-charge" Warner for any corrective work.
26      The next case to be considered is *Phoenix Ins. Co. vs. Sukut Construction Co.*, 136
27 Cal.App.3d 673 (1982).  This was a legal malpractice case in which the court affirmed a judgment
28 in favor of the insurance carrier, enforcing the term "might be expected to be the basis of a claim

or suit."   The reason the court enforced that provision is because the attorney knew, **prior to coverage**, that the client held the attorney responsible for a lien inadequacy created by the attorney and that the client had asked the attorney "to work for free" to cure the problems created by the lien's inadequacies.  No such client demands were made by Morgan or Cunningham in the present case.

Another case that is often cited with respect to these rescission cases is *Imperial Casualty & Indem. Co. vs. Sogomonian*, 198 Cal.App.3d 169 (1988).   In *Sogomonian*, the insured suffered a loss of their home due to a fire.  When they attempted to apply for coverage under their homeowner's insurance policy, the insurance company, after conducting an extensive investigation, sought and obtained rescission of the policy due to the fact that the insureds made at least seven different undisputed misrepresentations in their policy application concerning previous loss history, policy cancellations, a landslide loss, a water damage claim, and a theft loss exceeding $100,000 in value.  The court held that the failure to report these losses in the insurance application was sufficient grounds for rescission.  In the present case, no "loss history" evidence exists.

Another case, one cited by the court earlier in this case in its decision to deny Warner's motion to dismiss, is *Low v. Golden Eagle Ins. Co.,* No. A094961, 2002 WL 99556, 2002 Cal.App. Unpub. LEXIS 4549 (Cal. Ct. App. Jan. 25, 2002) (unpublished).  In that case, also involving an attorney, clear and convincing evidence existed that the client had written a letter to the attorney discharging him, and had complained to the attorney about the attorney's work in a breach of contract case and a wrongful termination case against Columbia Broadcasters, Inc. that the attorney had handled on behalf of the client.  The attorney later conceded he had suspicions, prior to coverage that the client was contemplating a suit against the law firm.   No such evidence exists in the present case.

Another case is *Carolina Cas. Ins. Co. vs. RDD, Inc.,* 685 F. Supp. 2d 1052 (2010), also cited by AAIC is this motion.  That case involved employment practices liability insurance.  In applying for this insurance, the insured denied any threats by any current or former employees to take legal action or other action against the insured or to demand or request money or non-money

relief.  Despite that denial, the court found that there was an employee name Sarah Lemke who, prior to coverage, resigned because, as she stated in her resignation letter, she was subject to sexual harassment by senior managers, even by the owners of the restaurant where she worked, on a "nearly weekly basis in the last year or so of my employment."  She went on to complain that ultimately the sexual harassment and retaliation negatively harmed her mental and physical health causing her doctor to order her to take medical leave.  "My doctor now tells me that I cannot return to this work because it would be utterly devastating to my health, etc."  Such evidence **which was known to the insured prior to coverage**, was sufficient for the court to deny coverage.  In the present case no such **prior to coverage** evidence exists.

Finally, there is the recent case of *Admiral Ins. Co. vs. Superior Court (A Perfect Match)*, 18 Cal.App.5th 383 (2017).  This involved a professional liability insurance policy issued to a company that matched surrogates and egg donors with infertile families.  In the insurance application, the insured was asked whether the insured knew or could have reasonably foreseen that a professional incident might result in a claim.  In other words, the insurance company was excluding coverage for potential claims that A Perfect Match knew or reasonably should have known about but failed to disclose, the same way AAIC is trying to do in the present case.

But unlike Warner's situation, there was no question that prior to coverage A Perfect Match knew about a potential claim from former clients who intended to file suit arising out of the birth of the family's daughter with a rare form of eye cancer.  A lawyer representing this family, **prior to coverage**, had sent a complaining letter to A Perfect Match and had made notice of the family's intent to file a complaint alleging professional negligence.  No such "complaining letter" was sent to Warner prior to coverage in this case.

In summary, then, as stated at the outset of this discussion, there are no reported California cases which allow an insurance company to rescind its policy under these circumstances without proof that prior to coverage the insured had received some kind of complaint from some source, either from the client or from a third party professional complaining about the work provided by the insured.  No such cases exist, and the reason they don't exist is because any rule that would require the attorney to disclose legal work untethered to client dissatisfaction would put the

attorney in a position of speculating.  It is only when client dissatisfaction occurs that the attorney's obligation to report is triggered.  **In the absence of such dissatisfaction, the attorney has no legal obligation to report any legal work occurring in his practice.**

### IV.   NO MATERIAL MISREPRESENTATIONS

As explained by the California Supreme Court in *Thompson vs. Occidental Life Ins. Co., supra*, in order for an insurer to obtain rescission, it must prove that the insured made a material misrepresentation in the insured's application for the insurance.  [*Id.* p. 916.]   [See also, *Insurance Code* §331, 359.]

It is also important to note that the burden of proof with respect to this issue of misrepresentation is on the insurer.   (*Thompson, supra,* at p. 919.)

Related to the issue of burden of proof is the insurance coverage doctrine which states that the insurer cannot rely on answers given by the insured in the insurance application when the questions presented by the insurer are ambiguous or misleading. [ *O'Riordan vs. Federal Kemper Life Assur.,* 36 Cal. 4th, 281, 287-288; *Duarte vs. Pacific Specialty Ins. Co.*, 13 Cal.App.5th 45, 60-61 (2017).]

Applying these insurance coverage rules to the present case, as can be seen from the discussion above, Warner gave truthful answers to the questions posed on the insurance application because at the time of the application, **there were no claims pending**, and the **clients had not voiced any criticism** of Warner's work which would trigger an obligation on the part of Warner to answer "yes" to the question of potential claims pending at the time of the application.  Because Warner's responses were truthful, no material misrepresentation occurred, and without a material misrepresentation AAIC is not entitled to rescission.

### V.   INCREASE IN PREMIUM

Derek Hall was the underwriter for this insurance, and his Declaration was presented by AAIC in support of this motion for summary judgment.  In Paragraph 21 of his Declaration, Hall confirmed that the only change that would have occurred if Warner had answered "yes" to the claims questions at issue in this insurance dispute would have been an increase in premium to

$6,175.49 from $5,573.38.  When Thomas Fitzgerald, who was the AAIC insurance program underwriter for AAIC, was deposed, he gave the same answer on this point:

> Q. So would it be your view that if Warner had disclosed, I'll call it the Phillips case, the primary change would have been an increase in premium; is that correct?
>
> A. Correct.

[A copy of that portion of Fitzgerald's deposition is attached as **Exhibit 17**.]

In other words, if this testimony is to be believed, the only change in this case if Warner had answered "yes" to the claims questions at issue would be a $602 increase in premium.  No other changes would have occurred, and AAIC would be obligated to provide **full coverage** to Warner the under insurance policy including the cost of defense.

That raises the question of whether an increase in premium alone is sufficient to constitute a material misrepresentation allowing the insurance insurer to rescind the entire policy.

There appears to be very little case law on this point.

On page 22 of its motion, AAIC cites the case of *Old Line Life Ins. Co. vs. Superior Court*, 229 Cal.App.3d 1600, 1604 (1991) in support of its view that an increase in premium alone is sufficient to have the entire policy rescinded.  That appears to be the minority view.  The majority view, and the one that is more persuasive, can be found in other jurisdictions.  These include *Massachusetts Mut. vs. Manzo*, 234 N.J. Super., 266 (1989); *Harrington vs. Aetna Casualty and Surety Company,* 489 S.W. 2d 171 (Tex. Ct. App. 1972); and *Evanston Ins. Co. vs. Mellors,* 141 F. Supp. 3d 1367, 1377 (Dist. Ct. Southern Dist. of Georgia, 2015).

Warner does not anticipate that the court will make a definitive ruling on this particular issue.  Instead, Warner's intention here is to preserve this issue in the event there is an appeal.  Ultimately, it is up to the California Supreme Court to decide this issue, and that can come about only if the Ninth Circuit certifies this question to the California Supreme Court.

## VI.   IRRELEVANT ISSUES

In its attempt to misdirect the court, AAIC has raised two irrelevant issues that require a brief discussion.

First, AAIC cites to CRPC 3.500, the former California rule of professional conduct which

stated that a member shall keep a client reasonably informed about significant developments relating to employment or representation. There has been no suggestion that Warner in any way violated that Rule. As the record indicates, Warner repeatedly kept Morgan and Cunningham advised of the developments, including the adverse demurrer rulings in the underlying Phillips malpractice case, and AAIC does not argue to the contrary.

Next, AAIC cites to a State Bar Standing Committee Opinion that went into effect in 2019, two years after Warner submitted his application to AAIC, that attempts to interpret State Bar Rules pertaining to a lawyer's ethical obligations when lawyers in a law firm consult with outside counsel concerning matters relating to the firm's representation of a current client. None of that has anything to do with the disclosures that Warner admittedly gave to Morgan and Cunningham in the present case. Furthermore, as stated on page 12 of this State Bar Standing Committee Opinion, the opinion "is advisory only, it is not binding upon the courts, the State Bar of California, its Board of Trustees, or any persons or tribunals charged with regulatory responsibilities or any licensee of the State Bar."

Finally, it should be noted that Warner's duty to abide by State Bar rules is to benefit clients, not to benefit third party insurance companies trying to wiggle out of their contractual obligations.

In summary, AAIC's State Bar discussion is totally irrelevant to this case.

Another irrelevant issue raised by AAIC is a deposition response that Warner gave when some hypothetical questions were proposed to him concerning what would have happened in the future if an appeal had been taken in the underlying Phillips malpractice case and that appeal eventually was lost. The specific question was this:

> Q. Under that circumstance **[if the appeal had been lost]**, based on your understanding, would that have provided **[at that point in time]** a basis for bringing a malpractice claim? [Emphasis in bold added.]
>
> A. Potentially yes.

That answer was correct. The problem of course is that Warner was speculating as to what possibly could happen **in the future;** he was not giving a statement as to what existed at the time he submitted his insurance application to AAIC.

1  All of this leads back to the fundamental question of whether or not the clients complained.
2  They did not, and therefore Warner was under no obligation at the time he submitted his
3  application to AAIC to report the adverse ruling in the underlying Phillips malpractice case, a
4  ruling which still had not been finalized until **after** AAIC's coverage went into effect at the end of
5  April 2017.

### VII.   ATTORNEY FEES

As part of their motion, AAIC is asking the court to order Warner to repay the attorney fees and defenses costs that AAIC has advanced to date. No evidence has been presented to support this claim for attorney fees.

The only information AAIC has given on this point is a list of the payments made, as set forth in the Declaration of its claims adjustor, Alex Cayer. Such a listing does not satisfy the well-established rule that admissible evidence must be presented in order to support an attorney fee award.

Furthermore, Local Rule 54-5(b) provides a detailed summary of all of the information that must be presented in order to support an attorney fee claim. This information includes a statement of the services rendered by each person for whose services are claimed, together with a summary of time spent, and a statement describing the manner in which the time records were maintained. In addition, the Local Rule requires a brief description of the relevant qualifications and experience and a statement of the customary hourly charges of each such attorney or person involved in the attorney fee claim.

None of this information was presented in this case, therefore there should be no award of attorney fees.

### VIII.   CONCLUSION

As stated at the outset of this memorandum, there are disputed issues of law and facts that clearly defeat this motion. Those disputed issues of law and facts, are reinforced by two extremely persuasive argument presented by Warner:

1.  There are no reported cases under these circumstances in which a court has allowed rescission in the absence of some form of client dissatisfaction.

1    2.    As explained by Warner's expert witness, Allen Kuo, "An attorney is not required to step into the shoes of the client and speculate whether the attorney's representation of the client may lead to potential claim."   [Kuo declaration, par. 7.]

To grant the insurer's motion here would be poor public policy.  Trial lawyers lose cases all the time, lose important motions and motions in limine.  Trial courts are not infallible, which is why we have courts of appeal  Not every loss at the trial court would lead the lawyer to conclude that the legal work "might be expected to lead to a claim."  All the more so where, as here, the client is timely informed of the adverse result, decides not to appeal, and move on with other cases with the same attorney.  If AAIC really wanted to know if the lawyer or law firm had lost any cases on demurrer, summary judgment, or trial it could have easily fashioned such a straight forward objective question.  Instead, AAIC asked for Warner's opinion based on his assessment of the work, the result, and the client's reaction—or in this case, lack of reaction.  To grant AAIC's motion on this record, as a matter of law, would be poor public policy because it would lead to all law firms throughout the state having to answer "yes" based on every case lost—even when the client did not complain.  That is simply not the call of the question.

DATED: August 27, 2020                           HANSON BRIDGETT LLP


By:_____*/s/ Alexander J. Berline*_____
     ALEXANDER J. BERLINE
     Attorneys for Defendants
     JOHN G. WARNER and LAW OFFICES OF
     JOHN G. WARNER