UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN G. WARNER, et al.,<br><br>Defendants. | Case No. 19-cv-04628-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 71 |

Plaintiff American Alternative Insurance Corporation filed the instant action against Defendants John G. Warner and Law Offices of John G. Warner, seeking to rescind a professional liability insurance policy issued to Defendants. (First Amend. Compl. ¶ 1, Dkt. No. 56.) Pending before the Court is Plaintiff's motion for summary judgment on its first and second causes of action for rescission. (Pl.'s Mot. for Summ. J. at 13, Dkt. No. 71.)

The Court deems this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b) and VACATED the October 1, 2020 hearing. Having considered the parties' filings and relevant legal authority, the Court DENIES Plaintiff's motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

In August 2013, Defendant Warner represented Daniel H. Morgan, Mark Cunningham, and their development company MCEE (collectively, "Morgan Clients") in a lawsuit brought by George Morf (the "*Morf* Action"). (Warner Decl. ¶¶ 3-4.) The *Morf* Action was also brought against the law firm Phillips, Downs & Simontacchi, LLP ("Phillips Firm"); in a prior lawsuit, the Phillips Firm had jointly represented Morf and the Morgan Clients. (Warner Decl. ¶ 5.) In the *Morf* Action, Morf alleged that the Phillips Firm failed to advise him that there was a conflict of

interest due to the joint representation. (Warner Decl. ¶ 5.)

In April 2015, Cunningham was dismissed from the *Morf* Action. (Warner Decl. ¶ 5.) In June 2015, the jury rendered a verdict in favor of Morf and against Morgan and MCCE on the contract and negligent misrepresentation claims. (Warner Decl. ¶ 6, Exh. 1.) The jury also assessed damages against the Phillips Firm for breach of fiduciary duty, although that portion of the verdict was later overturned. (Warner Decl. ¶ 6.) Defendant Warner filed an appeal, which was dismissed on Morgan's instruction. (Warner Decl. ¶ 7.)

In March 2016, Defendant Warner wrote a letter to the Morgan Clients, suggesting that they had a malpractice claim against the Phillips Firm and could demand reimbursement for all attorney's fees paid during the time there was a conflict of interest (approximately $1.6 million). (Warner Decl. ¶ 8, Exh. 2.) On April 25, 2016, Defendant Warner wrote another letter to the Morgan Clients, evaluating the litigation. (Pl.'s Mot. for Summ. J., Exh. 1 at AAIC000256, Dkt. No. 71-6.) Defendant Warner specifically raised the statute of limitations, explaining that the statute of limitations for a legal malpractice claim was generally the earlier of: (a) one year from discovery of the facts constituting the wrongful act or omission, or (b) four years from the date of the wrongful act or omission. (*Id.* at AAIC000257.) Defendant Warner further explained that there "is a tolling exception set forth in the legal malpractice statute of limitations, which states that the claim for legal misrepresentation is **tolled** until such time as the plaintiff has sustained an actual injury." (*Id.* at AAIC000257-58.) Defendant Warner stated that in the context of the *Morf* Action, the statute of limitations would commence upon the entry of the June 9, 2015 adverse judgment. (*Id.* at AAIC000258.) Defendant Warner also stated:

> The reason we need to rely upon the tolling exception to this legal practice statute of limitations is because most of the wrongful acts alleged against Scott Phillips occurred many years ago and without a tolling exception any claims against Scott Phillips and his law firm would be barred by the one-year statute of limitations.

(*Id.*)

On June 6, 2016, Defendant Warner filed a malpractice complaint on behalf of the Morgan Clients against the Phillips Firm (the "*Phillips* Action"). (Warner Decl. ¶ 9, Exh. 2.) On February 7, 2017, the court dismissed the *Phillips* Action without leave to amend on statute of limitation

grounds. The court rejected the argument that the Morgan Clients did not suffer an injury until the jury verdict was rendered; rather, the court found they "sustained 'actual injury' at the time they incurred attorney's fees and costs to defend themselves in the Morf action, i.e., more than one year before they filed this action on June 6, 2016." (Pl.'s Mot. for Summ. J., Exh. 1 at AAIC000253.)

On February 10, 2017, Defendant Warner sent Morgan and Cunningham a letter explaining that the court had concluded that the *Phillips* Action was barred by the statute of limitations. (Warner Decl., Exh. 6.) Defendant Warner explained why he believed the court was incorrect and laid out options going forward, including an appeal. (*Id.* at 4.)

On March 8, 2017, Derek Hall – a broker and underwriter for Plaintiff – e-mailed Defendant Warner regarding the expiration of his professional liability insurance on May 8, 2017. (Warner Decl., Exh. 7; Hall Decl. ¶¶ 3-5, Dkt. No. 71-3.) Hall also attached the insurance renewal application. (Hall Dec. ¶ 5.)

On March 16, 2017, Defendant Warner sent the Morgan Clients another letter regarding the *Phillips* Action, again outlining their options and describing arguments that could be made on appeal. (Warner Decl., Exh. 8.)

On April 3, 2017, Defendant Warner submitted his completed liability insurance application. (Hall Decl. ¶ 6; Pl.'s Mot. for Summ. J., Exh. 2.) In Section VI, Insurance and Claim History, the application asked: "After inquiry, are any of attorneys in your firm aware . . . b. of any legal work or incidents that might be expected to lead to a claim or suit against them?" (Pl.'s Mot. for Summ. J., Exh. 2 at 000006.) Defendant Warner selected "No." (*Id.*) In Section VII, Additional Information, the application included a provision "Representations," which stated in relevant part: "I/We specifically asked all lawyers in our firm if they have knowledge of any claim, potential claim, disciplinary matter or circumstances that may Rise against us that is not listed in our response to Questions 7(V) & Questions 8 A and B (VII). All lawyers have responded 'No' Please Initial Here." (*Id.*) Defendant Warner initialed the Representations. (*Id.*)

Based on Defendant Warner's application, Hall determined that the premium for Defendants' professional liability insurance (the "Policy") would be $5,573.38. (Hall Decl. ¶ 7; Pl.'s Mot. for Summ. J., Exh. 10 at AAIC00059.) On April 4, 2017, Hall e-mailed Defendant

3

Warner the premium quotation, and requested that Defendant Warner provide a No Known Loss Warranty Letter. (Hall Decl. ¶ 8; Pl.'s Mot. for Summ. J., Exh. 2 at 000013-20.)

On April 12, 2017, Defendant Warner sent the requested letter to AAIC's agent, First Indemnity Insurance Agency, which stated in relevant part:

> I am not aware of any claims, potential claims, disciplinary matters, investigations or circumstances that may give rise to a claim. I have specifically asked all attorneys and employees if they have any knowledge of any claim, potential claim, disciplinary matter, investigation or circumstance that may give rise to a claim that is not listed in our application dated April 3, 2017. All lawyers and employees have answered no.

(Warner Decl., Exh. 9; Hall Decl. ¶ 8.)

On April 18, 2017, Defendant Warner sent the Morgan clients another letter, again explaining why he believed the state court's dismissal was wrong and the potential for an appeal. (Warner Decl. ¶ 11, Exh. 10 at 3.)

On April 20, 2017, the Policy was issued effective from May 8, 2017 through May 7, 2018. (Hall Decl. ¶ 12.)

On May 3, 2017, the Morgan Clients confirmed that they had decided not to appeal. (Warner Decl. ¶ 12, Exh. 13.) Defendant Warner had no further involvement with the Morgan Clients with respect to the Phillips Firm until January 2018. (Warner Decl. ¶ 13.) The Morgan Clients did not voice any dissatisfaction with Defendant Warner's legal work in the *Phillips* Action, and Morgan continued to pay Defendant Warner for legal services in the *Morf* case, including payments on April 24, July 1, and October 1, 2017. (Warner Decl. ¶¶ 13-14, Exh. 14.)

On January 16, 2018, Defendant Warner received a demand letter from Garet D. O'Keefe, on behalf of the Morgan Clients. (Warner Decl., Exh. 15.) The demand letter stated:

> I attach the complaint for malpractice we will be filing against your firm for failure to timely file suit against the Phillips firm, among other claims arising from your representation in the Underlying Morf Action. Before you filed the Underlying Phillips Malpractice Action, [Morgan and Cunningham] asked me whether I might be interested in prosecuting those claims as I have extensive experience handling legal malpractice matters on both the plaintiff and defense side. I advised them the statute of limitations had run, but I was not interested in pursuing a claim against your firm for malpractice based on a hypothetical. I declined the representation, and informed them to allow your firm to prosecute the malpractice action against

4

> Phillips. . . . If I were right, then your negligence would be established by a court order dismissing the case on demurrer, which is how the Underlying Phillips Malpractice Action was resolved.

(Warner Decl., Exh. 15 at 2.) Defendant Warner asserts this was the first time the Morgan Clients had voiced dissatisfaction with his work in the *Phillips* Action. (Warner Decl. ¶ 13.)

On January 17, 2018, Defendant Warner tendered the demand letter to Plaintiff for defense under the Policy. (Pl.'s Mot. for Summ. J., Exh. 5 at AAIC000135.) On January 29, 2018, Plaintiff agreed to defend Defendant Warner against the demand letter, subject to a reservation of rights. (Pl.'s Mot. for Summ. J., Exh. 6 at AAIC000222.)

On February 2, 2018, the Morgan Clients filed a malpractice complaint against Defendant Warner (the "*Morgan* Action"). (Warner Decl., Exh. 16.) On February 9, 2018, Defendant Warner tendered the *Morgan* Action to Plaintiff. (Cayer Decl. ¶ 7, Dkt. No. 71-2.) On March 12, 2018, Plaintiff agreed to defend Defendants, but "reserve[d] the right to deny coverage to the extent that you knew or could have reasonably foreseen that the failure to timely file [the *Phillips* Action], and the subsequent dismissal . . . against Phillips, would form the basis of a claim against you." (Cayer Decl. ¶ 8; Pl.'s Mot. for Summ. J., Exh. 7 at AAIC000291.) Also in 2018, Hall prepared the quote for a proposed renewal of the Policy for May 2018-19; based on the notice that Defendant Warner had been sued, Hall calculated that the premium would increase to $6,175.49. (Hall Decl. ¶ 20.) Hall states that if he had known of the *Phillips* Action dismissal, he would have made the same changes to the calculations, which would have generated the same increase in the Policy's 2017 premium. (Hall Decl. ¶ 21.)

Plaintiff determined that Defendant Warner knew of the *Phillips* Action dismissal prior to filling out the insurance application. (Cayer Decl. ¶ 10.) On May 2, 2019, Plaintiff issued a supplemental reservation of rights letter, reserving the right to rescind the policy based on the failure to disclose the *Phillips* Action dismissal. (Cayer Decl. ¶ 12; Pl.'s Mot. for Summ. J., Exh. 8 at AAIC002096.) Plaintiff continues to represent Defendant Warner in the *Morgan* Action. (Cayer Decl. ¶ 15.)

### B. Procedural Background

On August 9, 2019, Plaintiff filed the instant case, seeking to rescind the Policy based on

Defendants' alleged material misrepresentations. (Dkt. No. 1.) On October 7, 2019, Defendants filed a motion to dismiss, arguing that the application was ambiguous because it asked that applicants state if there were any legal work that "might" be expected to lead to a claim. (Dkt. No. 13.) On December 3, 2019, the Court denied Defendants' motion to dismiss, finding that "use of 'might' in the Insurance Application and Policy is not ambiguous or unenforceable." (Order Denying Mot. to Dismiss at 7, Dkt. No. 39.)

On July 30, 2020, Plaintiff filed the instant motion for summary judgment. On August 27, 2020, Defendants filed their opposition. (Defs.' Opp'n, Dkt. No. 79.) On September 8, 2020, Plaintiff filed its reply. (Pls.' Reply, Dkt. No. 84.)[1]

## II.   LEGAL STANDARD

### A.   Request for Judicial Notice

A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

### B.   Summary Judgment

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient

---

[1] On September 22, 2020, Defendants filed an ex parte application for leave to file a sur-reply to respond to objects regarding his expert witness, Allen Kuo, and to present a new expert witness. (Dkt. No. 87.) On September 24, 2020, Plaintiff filed an opposition. (Dkt. No. 88.) The Court DENIES the ex parte application. As discussed below, the Court did not consider Mr. Kuo's opinion. Further, based on the parties' filings before the Court, the Court finds there is a triable question of fact as to whether there is a misrepresentation. Thus, Defendants' sur-reply is unnecessary.

evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III. DISCUSSION

#### A. Request for Judicial Notice

Plaintiff requests judicial notice for: (1) the *Phillips* Action complaint, (2) the February 7, 2017 dismissal of the *Phillips* Action, (3) the *Morgan* Action complaint, (4) State Bar Rule 3-500, and (5) State Bar Formal Opinion Interim No. 12-0005. (Pl.'s Req. for Judicial Notice ("RJN"), Dkt. No. 71-5.)

The Court takes judicial notice as to the court filings. It is well-known that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

Plaintiff, however, cites no authority in support of judicial notice of the State Bar rule or opinion. Accordingly, the Court denies judicial notice as to these items. *See Spindler v. State Bar of Cal.*, No. CV 18-8712-JLS(E), 2019 U.S. Dist. LEXIS 232614, at *11 (C.D. Cal. Mar. 19, 2019) (denying request for judicial notice of State Bar rules where "Plaintiff ma[de] no effort to show how any of these documents meet the requirement of Rule 201 of the Federal Rules of Evidence"). In any case, as discussed below, the Court does not find either relevant to this case.

#### A. Summary Judgment

Plaintiff argues that it is entitled to rescind the Policy because Defendants misrepresented or concealed material information on the insurance application, specifically the state court's February 2017 dismissal of the *Phillips* Action. (Pl.'s Mot. for Summ. J. at 1.) Defendants, in turn, again argue that the insurance application is ambiguous. (Defs.' Opp'n at 9-10.) In the alternative, Defendants argue that there was no material misrepresentation. (*Id.* at 14-15.)

##### i. Contractual Ambiguity

As an initial matter, the Court considers Defendants' argument that the insurance application was ambiguous and therefore unenforceable. First, Defendants point to Question 8, which asks if any attorneys in the firm are aware: "a. of any professional liability, claims made claims made [sic] against them in the past five years?" or "b. of any legal work or incidents that might be expected to lead to a claim or suit against them?" (Defs.' Opp'n at 9; Warner Decl., Exh.

8

1    7 at 000006.)  Defendants suggest that the lack of a time limit in 8.b. is inconsistent with 8.a.'s
2    five-year time limit.  (Defs.' Opp'n at 9.)  These are, however, two separate questions; simply
3    because 8.a. imposes a five-year time limit does not mean 8.b. must do the same.  Defendants cite
4    no authority otherwise.
5           Second, Defendants argue that in the Representations section, Defendant Warner was
6    required to initial that he had "specifically asked all lawyers in our firm if they have knowledge of
7    any claim, potential claim, disciplinary matter or circumstance that may Rise to a claim against us
8    that is not listed in our response to Questions 7(V) & Question 8 A & B (VII)."  (Defs.' Opp'n at
9    10; Warner Decl., Exh. 7 at 000006.)  Questions 8.a. and b. were, however, in Section VI, not
10   Section VII (which asks only for "Additional Information").  (*Id.*)  Defendants argue this drafting
11   mistake makes the second provision legally unenforceable because it is an incurable ambiguity.
12   (Defs.' Opp'n at 10.)  While there is a drafting error, it does not appear ambiguous; "[a]n
13   ambiguity in a written instrument exists when . . . the written language is fairly susceptible of two
14   or more constructions."  *Ike v. Doolittle*, 61 Cal. App. 4th 51, 74 (1998) (internal quotation
15   omitted).  Defendants fail, however, to explain how this drafting error is susceptible of two or
16   more constructions.  No reasonable person would doubt that the Representations refer to
17   Questions 8.a. and b. in Section VI.
18          Defendants also argue that the Representations include the ambiguous term "may,"
19   specifically whether the applicant has knowledge of any claim that may lead to a claim.  (Defs.'
20   Opp'n at 10.)  Defendants' argument is not well-taken.  The Court already concluded that the
21   terms "may" and "might" do not render the insurance application ambiguous, relying on California
22   authority.  (Order Denying Mot. to Dismiss at 5-7; *see also Phoenix Ins. Co. v. Sukut Constr. Co.*,
23   136 Cal. App. 3d 673, 676 (1982) (finding the phrase "might be expected to be the basis of a claim
24   or suit" to be "perfectly clear"); *Admiral Ins. Co. v. Superior Court*, 18 Cal. App. 5th 383, 387
25   (2017) (finding that an insurance policy that would not cover a claim arising from an incident the
26   insured knew or could have reasonably foreseen "may result in a claim" clearly provided "no
27   coverage if the insured knew or reasonably could have foreseen that the professional incident
28   might result in a claim").)  Defendants did not seek reconsideration of the ruling and cite no

United States District Court
Northern District of California

9

1 authority that requires a different conclusion in their opposition.

2 Finally, Defendants cite to Defendant Warner's April 12, 2017 letter, which states: "I am
3 not aware of any claims, potential claims, disciplinary matters, etc. that may give rise to a claim."
4 (Defs.' Opp'n at 10; Warner Decl., Exh. 9 at 000021.) Defendants argue that this language, which
5 was required by Plaintiff, uses the ambiguous terms "potential claims" and "may." (*Id.*) Again,
6 the Court has already found "may" is not ambiguous. Further, Defendants cite **no** authority that
7 "potential claims" is ambiguous or uncertain.

8 Accordingly, the Court concludes that the insurance application is not unenforceable.

### ii. Rescission

10 "Governing law permits an insurer to rescind a policy when the insured has misrepresented
11 or concealed material information in connection with obtaining insurance." *TIG Ins. Co. of Mich.*
12 *v. Homestore, Inc.*, 137 Cal. App. 4th 749, 755-56 (2006); *see also* Cal. Ins. Code §§ 331
13 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind"), 359
14 ("If a representation is false in a material point, . . . the injured party is entitled to rescind the
15 contract . . . ."). Here, the parties dispute: (1) whether Defendant Warner misrepresented or
16 concealed information, and (2) whether the misrepresentation or concealment was material.

a. Misrepresentation or Concealment

18 "A representation is false when the facts fail to correspond with its assertions or
19 stipulations." Cal. Ins. Code § 358. Further, "the burden of proving misrepresentation rests upon
20 the insurer." *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 919 (1973). To warrant
21 rescission, "an actual intent to deceive need not be shown." *Id.* at 916.

22 Here, the false representation at issue is Defendant Warner's failure to disclose the *Phillips*
23 Action dismissal when asked if he was aware of any legal work that might be expected to lead to a
24 claim. (Pl.'s Mot. for Summ. J. at 21.) Courts have applied an objective "reasonable person"
25 standard to such questions. For example, in *Sigelman v. Lawyers' Mutual Insurance Co.*, at issue
26 was the plaintiff's response to the question: "Does the applicant law firm . . . have knowledge of
27 any error or omission or any disagreement with the client which might reasonably give rise to a
28 claim or suit against him . . . ?" No. D050783, 2008 WL 4418183, at *3 (Cal. Ct. App. Oct. 1,

1    2008).² The Court of Appeal found that this question required the court "to consider whether [the

2    p]laintiff's asserted beliefs were reasonable under an objective standard, such as how a 'reasonable

3    attorney' would respond in answer to such a question." *Id.* at \*14.

4    At the summary judgment stage, the Court cannot definitively conclude that a reasonable

5    attorney would have disclosed the *Phillips* Action dismissal in the insurance application. Plaintiff

6    relies on cases where the insurance applicant was clearly on notice of a potential claim. For

7    example, in *Carolina Casualty Insurance Co. v. RDD, Inc.*, the defendants were asked whether

8    they "were aware of any fact, circumstance or situation involving [the d]efendants that might

9    reasonably be expected to result in a Claim, such as 'complaints or accusations . . . of

10   discrimination, harassment, or other Wrongful Acts." 685 F. Supp. 2d 1052, 1056 (N.D. Cal.

11   2010). The defendants answered no, despite having just received a letter where an employee

12   complained of being subject to sexual harassment on a near-weekly basis for the last year of the

13   employee's employment, harming her health to the point that she could no longer work for the

14   defendants. *Id.* Likewise, in *Phoenix Insurance Co.*, the defendant failed to report that he had

15   drafted an inadequate lien for a client even though he knew that the client held him responsible for

16   the lien's inadequacy. 136 Cal. App. 3d at 677. In both cases, a reasonable person would not

17   have asserted that they were unaware of potential claims under the circumstances.

18   Defendants, in turn, argue that an attorney never needs to report any legal work concerning

19   his practice unless a client expresses dissatisfaction. (Defs.' Opp'n at 10, 13-14.) The Court

20   disagrees; an attorney could be aware of a potential claim even in the absence of complaints. For

21   example, in *Sigelman*, the California Court of Appeal found that an attorney was on notice of

22   malpractice claims even where no client complaints were made. There, the attorney failed to

23   disclose a wrongful death complaint he had not timely filed, despite admitting that he had been

24   professionally negligent. 2008 WL 4418183, at \*2. The attorney also failed to disclose a

25   wrongful death case that was dismissed after he missed discovery deadlines, and the "court order

---

² Although "unpublished California Courts of Appeal decisions have no precedential value under California law, the Ninth Circuit is not precluded from considering such decisions as a possible reflection of California law." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167, n.6 (9th Cir. 2011).

terminating the case outlined in excruciating detail the procedural defects for which [the attorney] was responsible." *Id.* at *3. The attorney did not speak to either client after the dismissal of their claims. *Id.* at *2-3. The Court of Appeal concluded that given that both cases concerned "significant personal losses to the clients of an ongoing nature with potentially high compensatory values," the lack of reassurance from the clients that they would not sue, and the attorney's "undisputed knowledge of his own professional errors and omissions" that led to the dismissals of both claims, no reasonable person would have failed to disclose this information in the insurance application. *Id.* at *16-18.

The instant case does not rise to the level of *Carolina Casualty*, *Phoenix Insurance*, or *Sigelman*. Rather, it is more comparable to *Continental Casualty Co. v. Stanton Kay & Watson LLP*, Case No. 05-cv-5333-MJJ, 2006 WL 8442666 (N.D. Cal. Dec. 11, 2006). There, a law firm was to attend a foreclosure sale in order to provide legal advice for its client. *Id.* at *2. The law firm had no authority to bid. Both the law firm and client were late to the sale, arriving after the property had been sold. *Id.* The law firm then brought suit to invalidate the sale; during discovery, the law firm was questioned about its failure to timely arrive at the sale. *Id.* at *2, 5. The court ultimately upheld the sale. *Id.* at *2.

The law firm did not disclose the foreclosure sale or subsequent lawsuit when renewing its liability insurance. *Cont'l Cas. Co.*, 2006 WL 8442666, at *1. Shortly after its insurance was renewed, the law firm received a tolling agreement from their client regarding claims arising from the failure to timely arrive at the foreclosure sale. *Id.* The tolling agreement was the first time the law firm learned that its client might pursue claims against it. *Id.* at *2.

The district court found that there was a triable issue of fact as to whether the law firm had misrepresented or concealed information. *Cont'l Cas. Co.*, 2006 WL 8442666, at *6. The insurance company argued that a reasonable person would have disclosed the incident given the sale of the property at a "drastically undervalued price," as well as the "pointed questioning" of the law firm's failure to timely arrive at the sale. *Id.* at *4-5. The law firm, in turn, pointed to the fact that after the deposition, the client had renewed its retention agreement with the firm. *Id.* at *5. The client also never suggested that they faulted the law firm for arriving at the foreclosure

12

sale late. *Id.* Further, given that the law firm was only supposed to attend the sale as an advisor, and that the client's authorized bidder was also late, there was a question of whether the law firm could have expected a claim to arise. *Id.* Based on these circumstances, the district court concluded that "a 'reasonable' person in the place of [the law firm] could, [when applying for the insurance renewal] have concluded that the circumstances surrounding the foreclosure sale was not called for in the Application." *Id.* at *6.

Such is the case here. A reasonable attorney could conclude that disclosure was required, given the dismissal on statute of limitations grounds and that at issue in the *Phillips* Action was $1.6 million. But considering the evidence in the light most favorable to Defendants, a reasonable attorney could also conclude that the *Phillips* Action dismissal was not likely to lead to a claim. For example, Defendant Warner disclosed the statute of limitations issue to the Morgan clients prior to filing the *Phillips* Action. (Pl.'s Mot. for Summ. J., Exh. 1 at AAIC000257-58.) It does not appear the Morgan clients expressed dissatisfaction to Defendant Warner about the statute of limitations having potentially expired; instead, they hired him to move forward with the *Phillips* Action. (*See* Warner Decl. ¶ 9.) After the *Phillips* Action was dismissed, Defendant Warner immediately informed the Morgan clients of the dismissal, provided his legal analysis, and laid out their options and chance for prevailing on appeal.[3] (*See* Warner Decl., Exhs. 6, 8, 10.) Again, the Morgan Clients did not voice any dissatisfaction, and continued to pay Defendants for legal services in the *Morf* case. (Warner Decl. ¶¶ 13-14, Exh. 14.) Thus, as in *Continental Casualty Co.*, there is a triable question of fact as to whether Defendant Warner made a misrepresentation or concealed information when he did not disclose the *Phillips* Action dismissal.[4]

---

[3] Plaintiff suggests that per State Bar Rule 3-500 and Formal Opinion No. 12-0005, Defendants should have informed the Morgan Clients about a potential conflict of interest after the *Phillips* Action was dismissed. (Pl.'s Mot. for Summ. J. at 20-21; Pl.'s Reply at 5.) Even if true, it is unclear how this disclosure requires that Defendant Warner disclose the *Phillips* Action dismissal on the insurance application. Further, it appears both the Rule and Formal Opinion were issued in 2018 and 2019, *after* Defendant Warner submitted his insurance application. Thus, it is unclear how these would affect what a reasonable attorney would have done in 2017.

[4] Defendant provides a declaration by Allen Kuo, who opines whether a reasonable attorney would have disclosed the *Phillips* Action dismissal. (Kuo Decl. ¶ 4, Dkt. No. 79-3.) Plaintiff objects to the Kuo declaration and all references to the declaration. (Pl.'s Reply at 11-14.) The Court overrules the objection as moot, as the Court did not consider the Kuo declaration. Plaintiff also

b.  Materiality

"Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer.  The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." *Thompson*, 9 Cal. 3d at 916.  The test is a subjective one, requiring the court to determine "the effect truthful answers would have on the particular insurer, not on some 'average reasonable' insurer. *W. Coast Life Ins. Co. v. Ward*, 132 Cal. App. 4th 181, 187 (2005).  Further, "[t]he test for materiality is whether the information would have caused the underwriter to reject the application, charge a higher premium, or amend the policy terms, had the underwriter known the true facts." *Mitchell v. United Nat'l Ins. Co.*, 127 Cal. App. 4th 457, 474 (2005); *see also Holz Rubber Co., Inc. v. Am. Star Ins. Co.*, 14 Cal. 3d 45, 61 (1975) ("Materiality is determined by the probable and reasonable effect that truthful disclosure would have had upon the insurer in determining the advantages of the proposed contract.  Essentially, we must decide whether the insurer was misled into accepting the risk or fixing the premium of insurance."); *Bennet v. Nw. Nat'l Ins. Co.*, 84 Cal. App. 130, 136 (1927) (finding that providing the wrong car model was a material misrepresentation that could void the policy because higher premium rates were charged based on the model year).

Here, the underwriter for the 2017 renewal of the Policy states that when he prepared the 2018 renewal, he "had to change several factors on the underwriting ratings worksheets in 2018 from those used in 2017 because of the *Morgan* Action.  These changes resulted in an increase in premium of $6,175.49 . . . ." (Hall Decl. ¶ 20.)  Hall further states that if he had known of the *Phillips* Action dismissal when preparing the 2017 renewal, he "would have made the same changes to the factors on the underwriting ratings worksheets for the Policy as [he] did for the 2018 underwriting ratings worksheets.  This would have generated the same increase in premium for the Policy as it did for the 2018-2019 policy, meaning that the 2017 premium for the Policy

---

objects to Defendant Warner's statement that he had insurance coverage between 2016 and 2019. (Pl.'s Reply at 1415.)  Again, the Court did not consider this statement, and overrules the objection as moot.

14

would have been $6,175.49 instead of $5,573.38 as quoted and bound." (Hall Decl. ¶ 21.)

Defendants do not dispute this evidence. Rather, Defendants argue that an increase in premium alone should not be sufficient to have the entire policy rescinded. (Defs.' Opp'n at 15.) In support, Defendants contend that the "view that an increase in premium alone is sufficient to have the entire policy rescinded . . . appears to be the minority view," relying on out of state decisions. (*Id.*)

The problem, of course, is that California law is binding on the federal court on issues of state law. California courts have found that an increase in the premium is sufficient to establish materiality. *See Holz Rubber Co., Inc.*, 14 Cal. 3d at 61; *Mitchell*, 127 Cal. App. 4th at 474; *Bennet*, 84 Cal. App. at 136; *Merced Cnty. Mut. Fire Ins. Co. v. California*, 233 Cal. App. 3d 765, 772 (1991) ("Materiality is to be determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer; i.e., was the insurer misled into accepting a risk, fixing the premium of insurance, estimating the disadvantages of the proposed contract or making his inquiries); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1269 (2007) (finding that a misrepresentation was material because it affected "evaluation of risk and the amount of the premium charged").

Accordingly, the Court rejects Defendants' argument that the premium increase alone is insufficient to satisfy materiality. As the Court, however, has found there is a triable question of fact as to whether Defendants actually misrepresented or concealed information when they did not disclose the *Phillips* Action dismissal, summary judgment must be denied.

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion for summary judgment.

IT IS SO ORDERED.

Dated: October 22, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge

15