1

2

3

4                                      UNITED STATES DISTRICT COURT

5                                    NORTHERN DISTRICT OF CALIFORNIA

6

7     AMERICAN ALTERNATIVE                       Case No.  19-cv-04628-KAW
      INSURANCE CORPORATION,
8
                     Plaintiff,
9                                                **ORDER DENYING MOTION TO
              v.                                 STAY; GRANTING IN PART AND
10                                               DENYING IN PART MOTIONS TO
                                                 STAY; GRANTING IN PART MOTION
11    JOHN G. WARNER, et al.,                    TO REMOVE DOCUMENT**

12                   Defendants.                 Re: Dkt. Nos. 94, 100, 102, 104, 112

13            Plaintiff American Alternative Insurance Corporation filed the instant action against

14    Defendants John G. Warner and Law Offices of John G. Warner, seeking to rescind a professional

15    liability insurance policy issued to Defendants.  (First Amend. Compl. ¶ 1, Dkt. No. 56.)  Pending

16    before the Court are: (1) Defendants' motion to stay, (2) three administrative motions to file under

17    seal, and (3) Defendants' motion to remove an incorrectly filed document, as well as a myriad of

18    evidentiary objections.

19            Having considered the parties' filings and relevant legal authority, as well as the arguments

20    made at the December 3, 2020 hearing, the Court DENIES Defendants' motion to stay, GRANTS

21    IN PART AND DENIES IN PART the administrative motions to file under seal, and GRANTS IN

22    PART AND DENIES IN PART Defendants' motion to remove an incorrectly filed document.

23                                    **I.      BACKGROUND**

24            **A.      Factual Background[1]**

25            In August 2013, Defendant Warner represented Daniel H. Morgan, Mark Cunningham, and

26    their development company MCEE (collectively, "Morgan Clients") in a lawsuit brought by

27    _____

28    [1] The facts are summarized from the Court's prior order denying Plaintiffs' motion for summary
      judgment.  (Order Denying Mot. for Summ. J., Dkt. No. 98.)

George Morf (the "*Morf* Action").  The *Morf* Action was also brought against the law firm Phillips, Downs & Simontacchi, LLP ("Phillips Firm"), who had jointly represented Morf and the Morgan Clients in a prior lawsuit.

In March 2016, Defendant Warner suggested to the Morgan clients that they had a malpractice claim against the Phillips Firm due to a conflict of interest from the joint representation.  In June 2016, Defendant Warner filed a malpractice complaint on behalf of the Morgan Clients against the Phillips Firm (the "*Phillips* Action").  In February 2017, the *Phillips* Action was dismissed without leave to amend on statute of limitations grounds.  The court found that the statute of limitations was triggered when the Morgan Clients incurred attorney's fees and costs to defend themselves in the *Morf* Action.  On February 10, 2017, Defendant Warner informed the Morgan clients of the dismissal.

In April 2017, Defendant Warner submitted a liability insurance application to Plaintiff. The application asked if Defendants were aware "of any legal work or incidents that might be expected to lead to a claim or suit against them," to which Defendant Warner responded "No." Defendant Warner also sent Plaintiff a letter stating that he was "not aware of any claims, potential claims, disciplinary matters, investigations or circumstances that may give rise to a claim."  Later that month, Plaintiff issued Defendants' professional liability insurance (the "Policy").

In February 2018, the Morgan Clients filed a malpractice complaint against Defendant Warner (the "Underlying Action"), based on the failure to timely file the *Phillips* Action. Defendants subsequently tendered the case to Plaintiff for coverage.

**B.    Procedural Background**

On August 9, 2019, Plaintiff filed the instant case, seeking to rescind the Policy based on Defendants' alleged material misrepresentations.  (Dkt. No. 1.)  On July 30, 2020, Plaintiff filed a motion for summary judgment, which argued in part that Defendant Warner should have disclosed the *Phillips* Action dismissal based on California Rule of Professional Conduct 3-500 and State Bar Form Opinion Interim No. 12-0005.  (*See* Dkt. No. 84 at 5.)  Plaintiff subsequently designated a rebuttal expert opining on this matter.  (*See* Defs.' Mot. to Stay at 3, Dkt. No. 94.)

On October 21, 2020, Defendants filed the instant motion to stay, arguing that the

United States District Court
Northern District of California

1
2
3

designation of the rebuttal expert and an order on the then-pending motion for summary judgment could prejudice Defendants.  (Defs.' Mot. to Stay at 4.)  Accordingly, Defendants sought to stay the case pending resolution of the Underlying Action.  (*Id.* at 2.)

4
5
6
7
8
9
10

On October 22, 2020, the Court denied Plaintiff's motion for summary judgment.  With respect to Rule 3-500 and Opinion No. 12-0005, the Court observed that it was "unclear how [these rules require] that Defendant Warner disclose the *Phillips* Action dismissal on the insurance application.  Further, it appears both the Rule and Formal Opinion were issued in 2018 and 2019, *after* Defendant Warner submitted his insurance application.  Thus, it is unclear how these would affect what a reasonable attorney would have done in 2017."  (Order Denying Mot. for Summ. J. at 13 n.3.)

11
12
13
14
15

On October 27, 2020, Defendants filed a motion to shorten time on the motion to stay, or to continue the expert discovery deadline and trial date.  (Dkt. No. 99.)  Defendants also filed a motion to file under seal the entire rebuttal expert's report.  (Dkt. No. 100.)  On November 2, 2020, Plaintiff filed an opposition to both motions, as well as its own motion to file under seal portions of the rebuttal expert's report and the rebuttal expert's name.  (Dkt. Nos. 102.)

16
17
18
19
20
21
22
23
24
25

On November 4, 2020, Plaintiff filed an opposition to Defendants' motion to stay and administrative motion to file under seal.  (Pl.'s Opp'n, Dkt. No. 105; Dkt. No. 104.)  On November 6, 2020, Defendants filed an opposition to Plaintiffs' motions to file under seal.  (Dkt. No. 106.)  On November 12, 2020, Defendants filed its reply as to the motion to stay.  (Defs.' Reply, Dkt. No. 109.)  Defendants also filed a declaration with the entire unredacted rebuttal expert's report, which Defendants now seek to remove from the docket.  (Dkt. Nos. 109-1, 112.)  That same day, the Court denied Defendants' motion to shorten time, observing that "it is unclear what factual overlap there is between the underlying malpractice action and the instant case."  (Dkt. No. 110 at 2.)  On November 18, 2020, Plaintiff filed objections to Defendants' reply.  (Dkt. No. 111.)

26

## II.   LEGAL STANDARD

27
28

The parties dispute which legal standard the Court should apply in determining whether to stay the instant case.  Defendants rely on state law, namely *Montrose Chemical Corp. v. Superior*

*Court*, which allows a court to stay a declaratory relief action pending resolution of an underlying action "when the coverage question turns on facts to be litigated in the underlying action." 6 Cal. 4th 287, 301 (1993). Plaintiff, in turn, relies on *Landis v. North American Co.*, which governs a federal court's inherent power to stay. 299 U.S. 248 (1936). Under *Landis*, the court considers the competing interests, including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (1962). The moving party has the burden of "making out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.

Courts in this district have found that *Landis* applies to motions to stay "because federal procedural law governs in diversity cases." *Zurich Am. Ins. Co. v. Omnicell, Inc.*, Case No. 18-cv-5345-LHK, 2019 WL 570760, at *4 (N.D. Cal. Feb. 12, 2019) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also United Specialty Ins. Co. v. Bani Auto Grp., Inc.*, Case No. 18-cv-1649-BLF, 2018 WL 5291992, at *4 (N.D. Cal. Oct. 23, 2018) ("Because a stay of an action is procedural, not substantive, the Court applies Federal law to determine whether to grant a stay."). The Court agrees that *Landis* applies in this case. Regardless, the *Montrose* concerns regarding factual overlap are incorporated by *Landis*'s second prejudice factor. *See MS Amlin Corp. Member, Ltd. v. Bottini*, Case No.: 20cv687-GPC(LL), 2020 WL 5966612, at *4 (S.D. Cal. Oct. 8, 2020) ("the Court considers the *Landis* factors which incorporates the *Montrose* factor on the second prejudice factor"); *Zurich Am. Ins. Co.*, 2019 WL 570760, at *4 (discussing *Montrose* when weighing the second *Landis* factor).

### III.   DISCUSSION

**A.   *Motion to Stay***

    **i.   Harm to the Non-Moving Party of a Stay**

The Court first considers the possible harm to Plaintiff from staying this case. In general, courts in this district have rejected an insurer's claim of harm based on having to advance defense

United States District Court
Northern District of California

1   costs during a stay.  *See Zurich Am. Ins. Co.*, 2019 WL 570760, at *5; *United Specialty Ins. Co.*,

2   2018 WL 591992, at *5 ("this factor does not weigh against a stay, as USIC can be fully

3   reimbursed for the funds it spends in defending Bani Defendants should such reimbursement be

4   warranted").

5          Here, Plaintiff argues harm because the Court already rejected Defendants' prior proposal

6   to stay the case.  (Pl.'s Opp'n at 4.)  While true, it is not clear how this prior denial results in harm

7   to Plaintiff from staying the case now.  Further, Plaintiff contends Defendants delayed in filing the

8   instant motion to stay and motion to advance the hearing date.  (*Id.*)  Again, Plaintiff fails to

9   explain how this causes it harm should the Court grant a stay.

10         In the alternative, Plaintiff points to *Scottsdale Insurance Co. v. Grant & Weber* for the

11   proposition that an insurer suffers prejudice from a stay "where there is no overlap of logically

12   related, disputed facts . . . ."  (Pl.'s Opp'n at 5 (citing Case No. CV-16-610-MWF (AJWx), 2016

13   WL 7469636, at *5 (C.D. Cal. Apr. 21, 2016).)  This argument is essentially dependent on the

14   Court's finding as to the second *Landis* factor, as Defendants' claim of harm is based on an

15   alleged factual overlap.  Accordingly, the Court proceeds to the second *Landis* factor.

16                 **ii.     Harm to the Moving Party from Denying a Stay**

17         Next, the Court considers prejudice to Defendants if the case were to proceed.  Defendants

18   argue that it would be harmed because there is an overlap between the instant case and the

19   Underlying Action.  (Defs.' Mot. to Stay at 5.)  The Court disagrees.

20         In the motion to stay, Defendants contend that there is an overlap because Plaintiff had

21   argued that Defendant Warner violated certain ethical canons, namely the 2019 State Bar Opinion,

22   in relation to disclosing the dismissal of the *Phillips* Action.  (Defs.' Mot. to Stay at 3, 4.)

23   Plaintiff raised the State Bar Opinion for the argument that Defendants had an "ethical obligation

24   to disclose the conflict of interest that arises from missing a statute of limitations," and that this

25   obligation to disclose the conflict of interest should have suggested to Defendants that he disclose

26   the dismissal on his insurance application as well.  (*See* Dkt. No. 71 at 19-21.)  Even setting aside

27   the question of how the 2019 State Bar Opinion applies in this case when Defendants submitted

28   their insurance application in 2017 and the Underlying Action was filed in 2018, it is unclear how

a violation of the 2019 State Bar Opinion would overlap with the Underlying Action.  Again, the Underlying Action concerns whether Defendant Warner committed malpractice when he did not timely file the *Phillips* Action, **not** whether he committed malpractice *after* the *Phillips* Action was dismissed.  Defendants fail to explain what overlap exists, instead focusing solely on the fact that Plaintiff "injected this new issue into the summary judgment proceedings . . . ." (*Id.*)  Simply because this issue was "injected" into the instant case, however, does not mean there is an overlap.  Likewise, to the extent Defendants argue that any prejudice from the overlap "will be greatly magnified" if Defendants were to depose the rebuttal expert, again, no apparent overlap exists.

In the reply, Defendants for the first time identify the specific portions of the rebuttal expert's report that they assert overlap with the Underlying Action.[2]  As an initial matter, Plaintiffs correctly observe that this is prejudicial to Plaintiff, as Plaintiff did not know which parts of the rebuttal expert's report created an alleged overlap, and thus had no opportunity to respond to it in its opposition.  (*See* Dkt. No. 103 at 1.)  Regardless, because the Court finds these portions do not overlap with the instant case and thus do not warrant a stay, the Court addresses them.

Defendants argue that there is an overlap because an issue in the Underlying Action is whether Defendant Warner's fee agreement was limited to defending the Morgan Clients in the *Morf* Action, or if he also had a duty to inform the Morgan Clients that they had one year to file the malpractice action against the Phillips Firm.  (Defs.' Reply at 1.)  Defendants contend that the rebuttal expert gives opinions on these subjects.  (*Id.*)

The Court observes that this argument has never been raised in the underlying action, including in Defendants' opposition to the motion for summary judgment.  Rather, Defendants argued that they were not obliged to disclose the dismissal of the *Phillips* Action, particularly in absence of a complaint by the Morgan Clients.  (*See* Dkt. No. 79 at 10-14.)  Further, in reviewing the portions of the rebuttal expert's report identified by Defendants, the Court disagrees that the rebuttal expert is opining that Defendants had a legal duty to inform the Morgan Clients about the statute of limitations.  Rather, the rebuttal expert states that the trial court found that the statute of

---

[2] Indeed, Defendants did not even provide the rebuttal expert's report with the motion to stay, but filed it eight days later with the motion to shorten time.  (*See* Dkt. No. 100.)

United States District Court
Northern District of California

1    limitations expired while Defendant Warner represented the Morgan Clients.  (*See* Rebuttal Expert

2    Report at 8:23-9:2, 10:28-11:3, 11:8-10, 13:19-24, 14:2-4, 14:12-14 Dkt. No. 102-4.)  There can

3    be no real dispute that Defendant Warner did, in fact, represent the Morgan Clients at the time the

4    statute of limitations expired.  Whether Defendant had any legal obligation to inform the Morgan

5    Clients of the one-year statute of limitations, based on the scope of his representation in his fee

6    agreement, is a *separate* issue that is not before the Court.  Further, based on the Court's review,

7    the rebuttal expert does not opine that informing the Morgan Clients of the one-year statute of

8    limitations was, in fact, within the scope of Defendant's representation.

9        Defendants' other complaints regarding the rebuttal expert's report go to the 2019 State

10    Bar Opinion issue, or whether Defendant Warner had a duty to disclose to the Morgan Clients any

11    conflict of interest caused by the dismissal of the *Phillips* Action.  (*See* Rebuttal Expert Report at

12    11:18-12:14, 14:5-8.)  Again, this conflict arose only **after** the dismissal of the *Phillips* Action,

13    and the Underlying Action is premised on this dismissal.  Although Defendants speculate that their

14    former clients could amend the Underlying Action to include this claim, it is unclear how these

15    rules apply as they went into effect after the Underlying Action was filed.  (*See* Defs.' Reply at 5.)

16    It is also unclear what liability Defendants would have to their former client; the fact that

17    Defendants did not report an alleged conflict after the dismissal would not change the fact that the

18    *Phillips* Action was dismissed on statute of limitations grounds.

19        Finally, most of Defendants' other citations do not create overlap.  For example, the

20    rebuttal expert's statement that a demurrer from the Phillips Firm was to be expected does not

21    mean Defendant Warner was liable for that; again, that is dependent on the scope of Defendant

22    Warner's representation.  (*See* Rebuttal Expert Report at 6:25.)  Disagreements with Defendants'

23    experts about whether Defendants should have disclosed the dismissal of the *Phillips* Action on

24    the insurance application also do not create overlap.  (*See* Rebuttal Expert Report at 11:10-12,

25    14:5-8.)  Likewise, the rebuttal expert's opinion of whether Defendant Warner should have

26    expected there to be a claim based on his admission that there was a 50% chance of losing[3] does

27

28    _____

[3] Defendants themselves raised the 50% issue in their opposition to the motion for summary judgment.  (*See* Dkt. No. 79 at 6.)

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  not create overlap as to the scope of Defendant Warner's representation.  (*See* Rebuttal Expert

2  Report at 14:21-25.)  Finally, although Defendants identify several opinions that could

3  conceivably be opining as to the reasonableness of Defendant Warner's tolling arguments,

4  Plaintiff has agreed to redact these statements and not present them at trial.  (*See* Rebuttal Expert

5  Report at 12:28-13:1, 13:15-16, 14:19-20; Dkt. No. 102; Pl.'s Opp'n at 13.)

6        Ultimately, the underlying case concerns whether Defendants committed malpractice based

7  on the timing of the filing of the *Phillips* Action.  The instant case, in turn, concerns whether

8  Defendants should have reported the dismissal of the *Phillips* Action.  These issues are separate.

9  This Court can find that Defendants should have reported the dismissal, even if Defendants are

10  ultimately found to not be at fault in the Underlying Action.  Likewise, Defendants can be found

11  liable in the Underlying Action, while the Court can still find that Defendants had no obligation to

12  report the dismissal on their insurance application based on what a reasonable attorney would have

13  done.  In other words, whether or not Defendants committed malpractice, Defendants may have

14  had an obligation to disclose the dismissal of the *Phillips* Action.

15        The cases Defendants rely on are distinguishable.  In *MS Amlin Corporate Member, Ltd.*,

16  the defendants made the same arguments in the coverage action as the underlying action.  2020

17  WL 5966612, at *6.  Likewise, in *OneBeacon Insurance Co. v. Parker, Kern, Nard & Wenzel*, the

18  district court found it would be necessary to address what the defendants believed were their

19  responsibilities in the underlying action.  No. 1:09-cv-257 AWI GSA, 2009 WL 2914203, at *5

20  (E.D. Cal. Sept. 9, 2009).  Here, in contrast, Defendants did not even raise the scope of

21  representation argument in opposing the motion for summary judgment, and Defendants do not

22  suggest they are relying on this argument in the instant case to demonstrate the reasonableness of

23  Defendants' decision not to report the *Phillips* Action dismissal in the insurance application.

24        In the alternative, Defendants argue that the case should be stayed because they are being

25  required to fight a "two-front" war.  (Defs.' Mot. to Stay at 5.)  Courts have recognized that

26  "prejudice occurs when the insured is compelled to fight a two-front war, doing battle with the

27  plaintiffs in the third party litigation while at the same time devoting its money and its human

28  resources to litigating coverage issues with its carriers."  *Great Am. Ins. Co. v. Superior Court*,

178 Cal. App. 4th 221, 236 (2009) (internal quotation omitted).  Such "prejudice does not depend on the existence of factual overlap with the underlying action, and will, in fact, be an issue for the trial court to consider *every time* an insured seeks to stay a declaratory relief action while the underlying action is still pending." *Id.*  Defendants cite no authority that this factor alone is sufficient to require a stay; rather, when no factual overlap exists, California courts require "balancing the insured's interest in not fighting a two-front war against the insurer's interest in not being required to continue paying defense costs which it may not owe and likely will not be able to recoup." *Id.* at 237.  These competing interests depend on factors such as "the anticipated duration of the underlying litigation, whether the insured has separate counsel in the two actions, and the availability of other insurance to cover the costs of defense." *Id.*

Defendants provide no analysis of this balancing test.[4]  The Court finds, however, that based on the procedural posture of this case, the balance weighs in favor of going forward with trial.  Many of the resources have already been expended in this case; the parties have completed discovery and motion practice, leaving only the pretrial conference filings and bench trial in February.  The case has been narrowed by the summary judgment ruling, which resolved any disputes over contract enforceability and materiality.  (*See* Order Denying Mot. for Summ. J. at 10, 15.)  Defendants do not suggest that these costs will be significant, or that they lack insurance to cover the costs of this defense.  In contrast, the Underlying Action will not go to trial until at earliest the summer of 2021, during which Plaintiff will continue paying defense costs that it may not owe.  The Court thus finds that proceeding to trial is appropriate.  *Compare with Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979 (1995) (finding a coverage action could proceed to early trial "where there is no potential conflict between the trial of the coverage dispute and the underlying action").

Accordingly, the Court finds that this factor weighs against a stay.

///

---

[4] Defendants first argued the issue at the hearing, discussing Defendants' ability to pay back costs if he loses at trial.  Plaintiff objected.  The Court will not consider Defendants' argument, as arguments raised for the first time at oral argument are waived. *Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019).

United States District Court
Northern District of California

### iii.   Orderly Course of Justice

The final *Landis* factor considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc.*, 300 F.2d at 268.  Here, given that there is no overlap, staying the case would not simplify any issues or result in inconsistent rulings.  Thus, it is in the interest of the Court and its need to move the cases on its docket forward to not stay this case.  This factor weighs against a stay.

Considering the *Landis* factors together, the Court concludes that a stay is not warranted.

### B.   Administrative Motions

The Court GRANTS IN PART and DENIES IN PART Defendants' October 29, 2020 motion to file under seal.  (Dkt. No. 100.)  The following portions of the rebuttal expert's report may be redacted: pages 12:28-13:1, 13:15-16, 14:19-20.

The Court GRANTS IN PART and DENIES IN PART Plaintiff's November 2 and November 4, 2020 motions to file under seal.  (Dkt. Nos. 102, 104.)  The following portions of the rebuttal expert's report may be redacted: pages 12:28-13:1, 13:15-16, 14:19-20.  References to these portions in the Capell and rebuttal expert's declarations may also be redacted.  The rebuttal expert's name may not be redacted.

The Court GRANTS IN PART Defendants' motion to remove the incorrectly filed declaration in connection with the reply.  (Dkt. No. 112.)  The document may be removed, but Defendants shall file a replacement declaration that only redacts the following portions of the rebuttal expert's report: pages 12:28-13:1, 13:15-16, 14:19-20.

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES Defendants' motion to stay, GRANTS IN PART AND DENIES IN PART the motions to file under seal, and GRANTS IN PART

///

///

///

///

10

1    Defendants' motion to remove the incorrectly filed document.

2          IT IS SO ORDERED.

3    Dated: December 16, 2020

4                                                    _____
                                                     KANDIS A. WESTMORE
5                                                    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California